**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN MCCRIMMON,** | : | **CIVIL NO. 1:15-CV-702** |
| | : | |
| **Petitioner,** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **C. MAIORANA,** | : | |
| | : | |
| **Respondent.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The petitioner, a District of Columbia prisoner, invites this Court to review and revise the sentence credit calculation done by the Federal Bureau of Prisons in his case. Having conducted this review, we find no error in that calculation, which properly allocates time previously served by McCrimmon, and assesses his parole eligibility date in accordance with District of Columbia law. While the application of these sentencing doctrines to McCrimmon's case yields a harsh result for this defendant, who was sentenced for acts committed when he was 17 years old, McCrimmon's recourse does not lie not with this Court, but rather with the sentencing court, the Superior Court for the Distirct of Columbia.

The pertinent facts in this case can be simply stated:  On September 24, 1994, McCrimmon, who was then 17 years old, was arrested in the District of Columbia and charged with the one count of conspiracy to assault and commit murder; four counts of assault with intent to kill while armed; one count of tampering with physical evidence; one count of murder while armed; and four counts of assault with a dangerous weapon.  (Doc. 5.)  On June 2, 1995, McCrimmon was sentenced in D.C. Superior Court to 20 to 60 months for conspiracy to commit murder; four years to life on each of the four counts of assault with intent to kill while armed; 1 to 3 years on the one count of tampering with physical evidence; 15 years to life on the charge of murder while armed; and 40 to 120 months on each of the four counts of assault with a dangerous weapon.  The judgment and commitment order further directed that McCrimmon was obliged to serve a five year statutory mandatory minimum jail sentences on five of these charges:  the murder while armed charge and the four counts of assault with intent to kill while armed.  Finally, the court's 1995 sentence expressly provided that all of these sentences were to be served consecutively to one another.

Under the Distirct of Columbia's sentencing system, the imposition of these multiple consecutive sentences had a series of adverse legal consequences for McCrimmon.  First, McCrimmon was required to serve a mandatory minimum of 25 years in prison.  While McCrimmon served this mandatory minimum 25 year sentence,

he was statutorily ineligible for good time credits.  Moreover, under D.C. law these mandatory minimum sentences were exempted from parole eligibility, and did not count towards McCrimmon's parole eligibility date.  White v. United States, No. 13-CO-1349, 2016 WL 4581283, at *1 (D.C. Sept. 1, 2016).  Beyond this threshold 25 year mandatory minimum sentence, which was exempt from parole eligibility, McCrimmon also faced a series of minimum and maximum sentences under the District of Columbia indeterminate sentencing scheme, where the sentencing court prescribed both a minimum and maximum sentencing range for each offense.  Further, under D.C. law, when these indeterminate sentences are imposed consecutively, as was done in this case, the minimum sentences aggregate for purposes of calculating parole eligibility, a factor which can dramatically extend and defer a sentenced prisoner's parole eligibility.  See e.g., Chatman-Bey v. Smith, 597 F. Supp. 509, 510 (D.D.C. 1984); Bryant v. Civiletti, 663 F.2d 286, 290 (D.C. Cir. 1981).

The sentencing calculation in this case aptly illuustrates the impact which these combined, consecutive, mandatory minimum, minimum and maximum sentences can have on an offender.  In McCrimmon's case when these multiple consecutive sentences were aggregated, the maximum term imposed upon McCrimmon was life imprisonment, and his minimum aggregate sentence was calculated to be more than 70 years.  The interplay of these various mandatory minimum, minimum and

maximum consecutive sentences under the D.C. Code also yielded a parole eligibility date of November 2063 for McCrimmon.

Following the imposition of these sentences, McCrimmon has repeatedly challenged the lawfulness of his sentences in the District of Columbia courts over the years. McCrimmon v. United States, 27 A.3d 121 (D.C. 2011); McCrimmon v. United States, 853 A.2d 154, 156 (D.C. 2004). Most recently, McCrimmon has argued to the D.C. Superior Court that the imposition of a life sentence, with a parole eligibility date of 2063 for a 17 year old offender was tantamount to a mandatory sentence of life imprisonment without parole for a juvenile, a sentence which the Supreme Court condemned in Miller v. Alabama, – U.S.– , 132 S. Ct. 2455 (2012).

The Superior Court of the District of Columbia has rejected this argument, albeit in a fashion which has now led McCrimmon to challenge the calculation of his parole eligibility date. Specifically, on August 11, 2014, the D.C. Suprerior Court entered a Memorandum Opinion and Order, stating that McCrimmon had erroneously concluded that "he has been sentenced to 90 years without parole." (Doc.1 p. 53.) This August 11, 2014 Memorandum Opinion and Order further stated that "the defendant has only been sentenced to 25 years before he is eligible for parole." (Id. at 53.) Following the entry of this order, McCrimmon wrote the court on September 8, 2014, requesting a new D.C. Department of Corrections face sheet and/or judgment

4

and commitment order.  (Id. at 56.)  On September 10, 2014, the court responded to McCrimmon's request, stating that "there is no amended J&C" and further advising McCrimmon to "confer with staff at the correction facility where [you] are confined for any sentence computation clarification."  (Id.)

On April 13, 2015, three days after the instant petition was filed, an order was entered in McCrimmon's D.C. criminal case, correcting a clerical error and affirming the validity of the McCrimmon's original sentence which was imposed on June 2, 1995.  That order stated, in part, as follows:  "This Court denied the motion (for post-conviction relief) on August 15, 2014.  In that Order, the Court erroneously stated that part of the defendant's sentence was to be served concurrently and that he had a 25 (twenty-five) year minimum term of incarceration.  This was an error, as all counts remain consecutive, and the Judgment and Commitment order dated June 2, 1995, is still valid."

Notwithstanding this clarification from the D.C. Superior Court, McCrimmon has proceeded with this federal habeas corpus petition, arguing that the Bureau of Prisons has erred in its calculation of his parole eligibility since the D.C. Superior Court has found that the mandatory aspect of his sentence is limited to 25 years imprisonment.  In the alternative, McCrimmon's petition also reprises his argument that, if this sentence is correctly calculated, the aggregate sentence is tantamount to a

5

life sentence without parole, something that is now forbidden for juvenile offenders. (Doc. 8.)

For the reasons set forth below, it is recommended that the Court limit its adjudication of this matter to the single issue properly before us, the calculation of McCrimmon's sentence by the Bureau of Prisons. Since that calculation appears correct under D.C. law given the various consecutive mandatory minimum, minimum and maximum sentences imposed here, this petition should be denied. As for McCrimmon's remaining sentencing arguments, those claims should be addressed by McCrimmon to the sentencing court, the D.C. Superior Court.

## II.    Discussion

In our view, in its present form this petition fails to state a sentence calculation error claim, given the nature of the D.C. Code's sentencing system. This petition invites this Court to review a sentence calculation conducted by the Bureau of Prisons for an inmate who was serving sentences imposed under the District of Columbia Code. There are two component parts to the legal analysis we are called upon to perform in a case such as this, where we examine a Bureau of Prisons sentence credit determination. It is well settled that: "The computation of a federal sentence requires consideration of two separate issues. Initially, we determine the commencement date of the federal sentence and then turn to the extent to which a defendant can receive

credit for time spent in custody prior to commencement of sentence." <u>Binford v. United States</u>, 436 F.3d 1252, 1254-55 (10th Cir. 2006).  As this Court has aptly observed: "'Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody.' <u>United States v. Smith</u>, 812 F.Supp. 368, 370 (E.D.N.Y.1993)."  <u>Chambers v. Holland</u>, 920 F. Supp. 618, 621 (M.D.Pa. 1996).

Each of these legal determinations, in turn, is made against the backdrop of a specific statutory and regulatory system for calculating credit for time served by prisoners.  A key component of this system involves the delegation of authority for initial sentence computations.  By law:

> The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, <u>United States v. Wilson</u>, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and has delegated that authority to the Director of the Bureau of Prisons. 28 C.F.R. § 0.96 (1992). . . . [Thus], [t]he decision to grant or deny credit for time served prior to the date of sentencing vests initially in the BOP, not the sentencing judge.

<u>Chambers v. Holland, supra</u>, 920 F. Supp. at 621.

However, as the Supreme Court has recognized, <u>United States v. Wilson</u>, 503 U.S. 329 (1992), in calculating credit for time served, the Bureau of Prisons is guided by statute; namely, 18 U.S.C. § 3585, which provides that:

7

(a) Commencement of sentence.-A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585.

This statute, and case law construing the statute, then guide us in addressing the two threshold questions which lie at the heart of this habeas petition: first, when did McCrimmon's sentence commence; and, second, to what extent may McCrimmon receive credit for any time already spent in custody?

With respect to the first of these questions regarding when McCrimmon's sentence commenced, it is clear that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody . . . ." 18 U.S.C. § 3585(a). Therefore, as a general rule, "[a] federal sentence commences when the defendant is received by the Attorney General for service of his . . . sentence. See 18 U.S.C. § 3585(a). See also United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir.1990). As a result, a federal sentence [typically] cannot begin to run earlier than

8

on the date on which it is imposed.  See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)."  Taylor v. Holt, 309 F. App'x 591, 592-93 (3d Cir.  2009). Applying this straightforward guidance, in this case the Bureau of Prisons correctly concluded that McCrimmon's sentence commenced when it was imposed, a date which is entirely consistent with the statutory guidance that a sentence "commences on the date the defendant is received in custody . . . ." 18 U.S.C. § 3585(a)

Section 3585 also defines for us the answer to the second question we must examine: to what extent may McCrimmon receive credit for any time already spent in custody against his federal sentence.  In this regard, it is undisputed that McCrimmon received prior custody credit towards his current sentence for time served from September 24, 1994, to June 1, 1995, the day before his current sentence was imposed on June 2, 1995, for a total of 251 days.  Thus, the Bureau of Prisons has satisfied its second statutory mandate in calculating McCrimmon's sentence.  It has credited him for time served.

The gravamen of McCrimmon's remaining sentence calculation claims in this case relate to the Bureau of Prisons' calculation of his parole eligibility.  While that parole eligibility determination yields a severe result for McCrimmon, we find no error in the calculation of this aspect of McCrimmon's sentence.  As we have noted, this calculation is a function of several features of the D.C. Code's indeterminate

sentencing system that was in place at the time of McCrimmon's conviction and sentence. Under the District of Columbia's sentencing system, the imposition of these multiple consecutive sentences had a series of legal consequences for McCrimmon. First, McCrimmon was required to serve a mandatory minimum of 25 years. While McCrimmon served this mandatory minimum 25 year sentence, he was statutorily ineligible for good time credits. Moreover, under D.C. law these mandatory minimum sentences are exempted from parole eligibility. White v. United States, No. 13-CO-1349, 2016 WL 4581283, at *1 (D.C. Sept. 1, 2016). Beyond this threshold 25 year mandatory minimum sentence, which is exempt from parole eligibility, McCrimmon also faced a series of minimum and maximum sentences under the District of Columbia indeterminate sentencing scheme, where the sentencing court prescribed both a minimum and maximum sentencing range for each offense. Further, under D.C. law, when these indeterminate sentences are imposed consecutively, as was done in this case, the minimum sentences aggregate for purposes of calculating parole eligibility, a factor which can significantly defer a sentenced prisoner's parole eligibility. See e.g., Chatman-Bey v. Smith, 597 F. Supp. 509, 510 (D.D.C. 1984); Bryant v. Civiletti, 663 F.2d 286, 290 (D.C. Cir. 1981). In the instant case, when these multiple consecutive sentences were aggregated, the maximum term imposed upon McCrimmon was life imprisonment, and his minimum aggregate sentence was

calculated to be in excess of 70 years.  The interplay of these various mandatory minimum, minimum and maximum consecutive sentences under the D.C. Code also yielded a parole eligibility date of November 2063 for McCrimmon.

While McCrimmon invites us to effectively re-write his D.C. sentences, and limit those sentences to a term of 25 years after which he is entitled to parole eligibility, the consecutive nature of the multiple sentences imposed against McCrimmon does not permit us to construe the sentence in this fashion.  Quite the contrary, it seems settled under the D.C. Code that these consecutive minimum sentences must be aggregated together when assessing parole eligibility.  See e.g., Chatman-Bey v. Smith, 597 F. Supp. 509, 510 (D.D.C. 1984); Bryant v. Civiletti, 663 F.2d 286, 290 (D.C. Cir. 1981).  Further, under the D.C. Code it also appears that the 25 year mandatory minimum sentences imposed upon McCrimmon are exempted from parole eligibility.  White v. United States, No. 13-CO-1349, 2016 WL 4581283, at *1 (D.C. Sept. 1, 2016).  These factors, which are prescribed by D.C. law, combine to extend McCrimmon's parole eligibility date far into the future.  However, since the D.C. Superior Court has recently, and explicitly, reaffirmed the consecutive nature of all of these sentences, we are not at liberty to construe the sentence in some other fashion which would yield a different parole eligibility date.

We recognize that the application of these sentencing doctrines to McCrimmon's case yields a harsh result for this defendant, who will not be eligible for parole until 2063 for acts committed when he was 17 years old.  Given this fact McCrimmon argues, in the alternative, that this long deferred parole eligibility makes his sentence, in effect, a sentence of life imprisonment without parole, a form of sentence which is now forbidden for juvenile offenders.  While McCrimmon advances this argument with great force in his pleadings, as to this sentencing issue McCrimmon's recourse does not lie not with this Court, but rather with the sentencing court, the Superior Court of the District of Columbia.

In sum, the sentence credit calculation undertaken in this case paid full fidelity to § 3585's mandate that: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . ., that has not been credited against another sentence." 18 U.S.C. § 3585(b).  Moreover, in reaching this calculation of McCrimmon's jail time credit, the Bureau of Prisons closely followed both the spirit and the letter of the law. Finally, the calculation of McCrimmon's parole eligibility date on this multitude of consecutive, mandatory minimum, minimum and maximum sentences comports with the legal requirements of the D.C. Code.  Accordingly, since the Bureau of Prisons' sentence credit calculation fully comports with the law, and provides McCrimmon all

12

the credit he is entitled to receive, this petition for writ of habeas corpus should be

denied.[1]

## III.   **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for

Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and

that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may  accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

---

[1]To the extent that McCrimmon's petition is, in reality, a challenge to his lawfulness of this D.C. Code sentence for a juvenile offender in the wake of Miller v. Alabama, – U.S.– , 132 S. Ct. 2455 (2012) that challenge must be brought in the venue of conviction, in this case the District of Columbia Superior Court.

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of September 2016.

*__S/Martin C. Carlson__*

Martin C. Carlson

United States Magistrate Judge